In the Matter of KEYSPAN ENERGY SERVICES, INC., Appellant, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. [744 NYS2d 245] —Peters, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered November 9, 2001 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Public Service Commission approving amendments to certain tariffs filed by respondent Consolidated Edison Company of New York, Inc.

In September 1997, respondent Public Service Commission (hereinafter PSC) approved a historic rate and restructuring plan for respondent Consolidated Edison Company of New York, Inc. (hereinafter Con Ed) for the purpose of fostering competition and increasing consumer choice in New York's electricity market. The three-phase "retail access plan" sought to ultimately allow consumers to purchase their electricity needs from a variety of different energy service companies, including petitioner, which would be permitted to deliver electricity to these customers over the existing infrastructure owned by Con Ed.

In a February 2000 order, the PSC approved Con Ed's proposal for phase three of the plan, subject to certain modifications and conditions, including a requirement that it file and serve on all interested parties, including petitioner, a revised tariff providing for, inter alia, a 0.2 cents per kilowatt-hour retail access incentive to certain classes of customers by March 1, 2000. Therein, the PSC noted that a process would be established to insure that all parties would obtain information on the filing and that its staff would facilitate a meeting of all

interested persons on these matters with an opportunity for initial and reply comments; the revised tariff amendments were to become effective on a temporary basis beginning May 1, 2000, subject to further notice and comments.

On March 1, 2000, Con Ed filed a revised tariff proposing, inter alia, a method whereby the 0.2 cents per kilowatt-hour retail access incentive could be effectuated. In its cover letter, Con Ed noted that a copy of its revised tariff amendment proposal was being served by regular mail and by e-mail on all interested parties, including petitioner. On March 21, 2000, the PSC issued a notice to all interested parties soliciting comments on, inter alia, Con Ed's proposed methodology; petitioner did not submit any comments.

On April 6, 2000, Con Ed circulated an e-mail to all interested parties, including petitioner, explaining its method of implementing the incentive formula. In an April 24, 2000 order, the PSC authorized the use of the incentive formula on a temporary basis; it was still subject to further review and final approval by the PSC. Again, Con Ed was directed to submit and serve on all interested parties, including petitioner, a revised tariff amendment incorporating any modifications contained in the PSC's order.

On April 28, 2000, Con Ed filed a revised tariff amendment which, inter alia, amended its formula for implementing the incentive proposal. Therein, it indicated that copies of the filing were being served by mail on all interested parties, including petitioner. Con Ed sought approval of this revised methodology and for the tariffs to become effective on a temporary basis as of May 1, 2000. By e-mail dated August 24, 2000, Con Ed circulated a memo to all interested parties, including petitioner, to clarify questions regarding the new incentive methodology. Therein, it indicated that although the PSC approved its initially proposed methodology for implementing the incentive program by order dated April 24, 2000, Con Ed now believed that the revised methodology, circulated to all interested parties and discussed with staff, was a more direct method of providing the incentive to customers and a means to reduce complex computer programming.

On November 30, 2000, after considering comments submitted by interested parties, including those submitted by E Cubed Company LLC on behalf of petitioner, the PSC issued an order approving Con Ed's tariff filings, including its revised incentive plan formula, on a permanent basis. In this final order, the PSC noted that it was clarifying its April 24, 2000 order to now authorize Con Ed to implement its revised incentive proposal in an effort to avoid unnecessary software complexities.

On March 27, 2001, petitioner commenced this CPLR article 78 proceeding against the PSC and Con Ed seeking to set aside the PSC's final approval of Con Ed's amended incentive formula on the ground that it violated petitioner's rights to procedural due process and because the order was arbitrary and capricious. Supreme Court dismissed the petition, prompting this appeal.

Initially, we reject any contention made by the PSC that petitioner lacks standing to maintain this proceeding since it claims to have suffered only an economic loss from the PSC's approval of Con Ed's revised incentive formula. Notably, the PSC found petitioner to be an interested party during the course of the administrative proceeding, mandating that it receive all notifications for change, revised tariff filings and any other document pertaining to Con Ed's efforts. Thus, petitioner, having been deemed a party to the underlying administrative proceeding, will also be considered an aggrieved party for these purposes (*see generally, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 412-413).*

Next addressing petitioner's contention that it was denied procedural due process since it did not receive adequate notice of the PSC's determination to approve Con Ed's revised methodology, we note that there is no specific statutory provision requiring that notice be given in any particular manner. Hence, "[i]n the absence of a specific statutory notice provision, the controlling standard [in the administrative context] is procedural due process" (*Matter of 1133 Ave. of Ams. Corp. v Public Serv. Commn. of State of N.Y.*, 62 AD2d 787, 788). Within these parameters, notice need only be " 'tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard" * * *, to insure that they

---

* Had we found that petitioner needed to demonstrate an "injury in fact" that falls within the "zone of interest" or "concerns, sought to be promoted or protected by the statutory provision under which the agency has acted" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773) to have secured standing, we would still conclude that petitioner met these requirements (*see*, Siegel, NY Prac § 136, at 223-225 [3d ed]). While we have recognized that economic injury may be insufficient, as a matter of law, to provide standing (*see, Matter of Nationwide Cellular Serv. v Public Serv. Commn. of State of N.Y.*, 180 AD2d 24, 27, *lv denied* 80 NY2d 757), "where a statute reflects an overriding legislative purpose to prevent destructive competition, an injured competitor has standing to require compliance with that statute" (*Matter of Dairylea Coop. v Walkley*, 38 NY2d 6, 11). These principles are particularly relevant when competitive economic injury results from the application of a public utility's rates (*see, Matter of Nationwide Cellular Serv. v Public Serv. Commn. of State of N.Y.*, supra at 26-28; *see also, Columbia Gas of N.Y. v New York State Elec. & Gas Corp.*, 28 NY2d 117, 123).

are given a meaningful opportunity to present their case' " (*id.* at 788, quoting *Mathews v Eldridge*, 424 US 319, 348-349 [citation omitted]).

In the February 28, 2000 order that Con Ed was directed to file and serve on all parties, including petitioner, the PSC included a description of Con Ed's proposed incentive mechanism and noted that a process would be established to insure that all parties would obtain information and be given an opportunity to comment. While Con Ed served such order on petitioner and thereafter complied with the PSC's directives by its March 1, 2000 filing, the record reveals that as early as April 6, 2000, Con Ed circulated an e-mail to all interested parties, including petitioner, which explained its revised methodology for implementing its originally proposed formula. By its filing on April 28, 2000, petitioner either knew or should have known that Con Ed had amended its proposed formula for implementing the incentive plan since petitioner was served with a copy of such filing; petitioner could have submitted comments on the proposed plan but never did so. Con Ed again reviewed the issue by circulating an e-mail dated August 24, 2000 to all interested parties, including petitioner, explaining its revised incentive formula. Again, no comments followed. Accordingly, petitioner can make no viable claim that it was not given a meaningful opportunity to comment on this matter and/or submit its objections prior to the PSC's final determination or within a reasonable time thereafter (*see, Matter of Executone/Monroe County v Public Serv. Commn. of State of N.Y.*, 71 AD2d 138, 142; *Matter of 1133 Ave. of Ams. Corp. v Public Serv. Commn. of State of N.Y.*, supra at 788).

We further reject any contention that the PSC's determination was arbitrary and/or capricious, lacking a rational basis (*see, Matter of Multiple Intervenors v Public Serv. Commn. of State of N.Y.*, 166 AD2d 140, 144). The determination required technical expertise involving, inter alia, the " 'weighing * * * [of] potential costs associated with * * * policy factors affecting a public utility's operation and management' " (*Matter of Chernow Assoc. v Public Serv. Commn. of State of N.Y.*, 230 AD2d 476, 479, quoting *Matter of Consolidated Communication Consultant Servs. v New York State Pub. Serv. Commn.*, 195 AD2d 849, 850)—matters which, in our view, exemplify a situation where there should be judicial deference (*see, Matter of Chernow Assoc. v Public Serv. Commn. of State of N.Y.*, supra at 479). The PSC's conclusion that programming complexities warranted a revision to the initially proposed retail incentive formula so that customers, the parties to benefit from the plan,

could more readily understand such benefit is rationally based. Accordingly, to the extent that the PSC treated Con Ed's e-mails as requests for clarification, we are of the opinion that the subsequent clarification of the April 24, 2000 order, as reflected in the November 30, 2000 order, is rational since "the PSC is not limited to data presented at the hearings and conclusions recommended by the parties at the hearings" (*Matter of Owners Comm. on Elec. Rates v Public Serv. Commn. of State of N.Y.*, 194 AD2d 77, 80).

Cardona, P.J., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.