■ In the Matter of Ivey Walton et al., Appellants, v New York State Department of Correctional Services, Respondent, et al., Respondent. [869 NYS2d 661]—

Mercure, J.P.

The facts of this matter are more fully set forth in prior decisions in this proceeding and a related action (8 NY3d 186 [2007], *modfg* 25 AD3d 999 [2006]; *Bullard v State of New York*, 307 AD2d 676 [2003]). At all relevant times, petitioners were recipients of collect telephone calls from inmates at facilities of respondent Department of Correctional Services (hereinafter DOCS). Inmates who wished to make telephone calls were required to place collect calls from a telephone system installed and maintained by respondent MCI Worldcom Communications, Inc. pursuant to an exclusive contract with DOCS. Under that contract, as amended in 2003, DOCS and MCI agreed to a flat rate of 16¢ per minute and a single surcharge of $3 per call. Furthermore, MCI agreed to remit 57.5% of its revenues to DOCS, which in turn placed that commission in a "Family Benefit Fund" account used for medical care and other programs to benefit inmates, such as a family reunion program. The Public Service Commission (hereinafter PSC) concluded that it lacked jurisdiction to review the portion of the charged rate that corresponded to the 57.5% DOCS commission, and otherwise approved the portion of the rate retained by MCI.

In 2004, petitioners commenced this combined declaratory judgment action and CPLR article 78 proceeding against DOCS and MCI. As relevant here, petitioners asserted seven causes of action, including four constitutional claims alleging that the 57.5% commission collected by DOCS constituted an unauthorized tax, effected an unconstitutional taking of their property, and violated their rights to both free speech and equal protec-

tion of the law. Supreme Court dismissed all claims, and this Court affirmed (25 AD3d 999 [2006]). Upon appeal, the Court of Appeals modified, determining in a plurality opinion that petitioners' constitutional claims—which this Court had dismissed as time-barred—were timely (8 NY3d at 197).* Following remittal, Supreme Court held that petitioners' constitutional claims failed to state a cause of action and dismissed the petition/complaint. We affirm.

Initially, we conclude that the filed rate doctrine does not bar petitioners' constitutional claims. " 'Simply stated, the doctrine holds that any "filed rate"—that is, *one approved by the governing regulatory agency*—is per se reasonable and unassailable in judicial proceedings brought by ratepayers' " (*Matter of Concord Assoc. v Public Serv. Commn. of State of N.Y.*, 301 AD2d 828, 830 [2003], quoting *Wegoland Ltd. v NYNEX Corp.*, 27 F3d 17, 18 [1994] [emphasis added]; *accord Beller v William Penn Life Ins. Co. of N.Y.*, 8 AD3d 310, 313 [2004]). The doctrine applies to tariff filings with the PSC, and bars claims for relief from injuries caused by payment of a "filed . . . rate the PSC has previously determined to be just and reasonable" (*Matter of Concord Assoc. v Public Serv. Commn. of State of N.Y.*, 301 AD2d at 831; *see Bullard v State of New York*, 307 AD2d at 678; *Porr v NYNEX Corp.*, 230 AD2d 564, 576 [1997], *lv denied* 91 NY2d 807 [1998]). Here, petitioners do not challenge the reasonableness of the rate approved by the PSC—i.e., the 42.5% portion of the charged rate that was retained by MCI. Rather, they challenge the portion of the charged rate that corresponded to the 57.5% commission retained by DOCS. Inasmuch as the PSC expressly determined that it lacked jurisdiction to review the challenged portion of the rate and, thus, declined to consider whether that portion of the rate was just and reasonable, the filed rate doctrine cannot bar the claims advanced herein (*see Beller v William Penn Life Ins. Co. of N.Y.*, 8 AD3d at 313; *cf. Bullard v State of New York*, 307 AD2d at 678 [concluding that the filed rate doctrine barred similar claims arising out of DOCS's 1996 contract with MCI after the PSC approved the filed rate, including DOCS's commission, *in its entirety*]).

---

* We note that petitioners' constitutional claims were asserted solely against DOCS and, thus, MCI did not participate in the proceedings on remittal. Moreover, DOCS has now been prohibited by statute from collecting revenue in excess of its reasonable operating costs (*see* Correction Law § 623 [3]) and, thus, petitioners' request for prospective injunctive relief is now moot (*see Byrd v Goord*, 2007 WL 2789505, 2007 US Dist LEXIS 71279 [SD NY 2007] [dismissing a parallel action as moot]). As DOCS concedes, petitioners' demand that it refund all commissions collected since October 30, 2003 remains before us.

Turning to the merits, petitioners first urge us to reinstate their claim that the DOCS commission constitutes an unlawful tax. Specifically, petitioners contend that the commission must be deemed a tax because it was not related to the necessary costs to DOCS of providing prison telephone service, and the money generated by the commission was placed instead in the Family Benefit Fund for other programs that benefit inmates (8 NY3d at 192). Mindful that on a motion to dismiss, we must " 'accept the facts as alleged in the [petition] as true, accord [petitioners] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (*Nonnon v City of New York*, 9 NY3d 825, 827 [2007], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), we nevertheless reject petitioners' argument.

Regardless of the label placed on a charge or an assessment, "taxes are burdens of a pecuniary nature imposed for the purpose of defraying the costs of government services generally" without relation to particular benefits derived by the taxpayer (*New York Tel. Co. v City of Amsterdam*, 200 AD2d 315, 318 [1994]; *see Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 58 [1978]; *Albany Area Bldrs. Assn. v Town of Guilderland*, 141 AD2d 293, 298 [1988], *affd* 74 NY2d 372 [1989]; *Matter of Joslin v Regan*, 63 AD2d 466, 470 [1978], *affd* 48 NY2d 746 [1979]). As DOCS asserts, the commission was not a tax unrelated to the use of MCI's telephone system and for which petitioners were legally liable to the state or any other governmental entity. Rather, MCI assumed responsibility for paying DOCS the commission on all completed calls—regardless of whether MCI received payment from users of the telephone system—as an expense incurred for the privilege of providing service in DOCS facilities. Indeed, the PSC noted, in describing the contractual arrangement between MCI and DOCS, that the commission is akin to that paid by payphone operators to premises owners for the right to install and maintain payphones on the owners' property. Such commissions have been treated as legitimate business expenses paid to gain access to telephone users (*see Matter of AT & T's Private Payphone Commn. Plan*, 3 FCCR 5834, 5836 [1988]; *see also International Telecharge, Inc. v AT & T Co.*, 8 FCCR 7304, 7306 [1993]), and the fact that a telephone company passes these expenses on to its customers does not transform such commissions into taxes (*see Valdez v State*, 132 NM 667, 673, 54 P3d 71, 77 [2002]; *see generally Lipscomb v Columbus Mun. Separate School Dist.*, 269 F3d 494, 500 n 13 [5th Cir 2001], *cert denied* 535 US 988 [2002]; *A & E Parking v Detroit Metro. Wayne County Airport Auth.*, 271 Mich App 641, 643-647, 723 NW2d 223, 226-228 [2006]). In any event,

even assuming that the DOCS commission was a tax, petitioners have not alleged that they paid their bills to MCI under protest or duress and, thus, their claims for a refund are precluded (*see Video Aid Corp. v Town of Wallkill*, 85 NY2d 663, 666-668 [1995]; *Community Health Plan v Burckard*, 3 AD3d 724, 725 [2004]).

We further conclude that there is no merit to petitioners' argument that imposition of the portion of the charged rate corresponding to the DOCS commission violated petitioners' rights to free speech and association. As DOCS concedes, because inmates retain their First Amendment rights and may exercise those rights insofar as is consistent with their incarcerated status, the state must provide a reasonable opportunity for inmates to communicate with the outside world (*see Overton v Bazzetta*, 539 US 126, 135 [2003]; *Matter of Lucas v Scully*, 71 NY2d 399, 404 [1988]). Assuming without deciding that such opportunities must include reasonable telephone access, however (*see Johnson v State of Cal.*, 207 F3d 650, 656 [9th Cir 2000]; *Byrd v Goord*, 2005 WL 2086321, *8, 2005 US Dist LEXIS 18544, *25 [SD NY 2005]; *McGuire v Ameritech Servs., Inc.*, 253 F Supp 2d 988, 1002 [SD Ohio 2003]; *Carter v O'Sullivan*, 924 F Supp 903, 909 [CD Ill 1996]; *but see Valdez v Rosenbaum*, 302 F3d 1039, 1047-1048 [9th Cir 2002], *cert denied* 538 US 1047 [2003]; *Arsberry v Illinois*, 244 F3d 558, 564-565 [7th Cir 2001], *cert denied* 534 US 1062 [2001]; *United States v Footman*, 215 F3d 145, 155 [1st Cir 2000]), inmates are not entitled to pay a particular rate for their calls inasmuch as "the loss of cost advantages does not fundamentally implicate *free speech* values" (*Matter of Montgomery v Coughlin*, 194 AD2d 264, 267 [1993], *appeal dismissed* 83 NY2d 905 [1994] [internal quotation marks and citation omitted]; *see Johnson v State of Cal.*, 207 F3d at 656; *Harrison v Federal Bur. of Prisons*, 464 F Supp 2d 552, 555-556 [ED Va 2006]; *Carter v O'Sullivan*, 924 F Supp at 911). Here, petitioners have not alleged that the charged rates are so exorbitant that they have been denied the ability to communicate with their incarcerated friends and relatives over the telephone or otherwise; rather, petitioners assert simply that they are not able to speak on the phone with their friends and relatives "as much as they would like." Given the absence of any indication that petitioners' constitutional rights have been infringed, we agree with Supreme Court that petitioners' First Amendment claims must be dismissed.

Furthermore, we conclude that Supreme Court properly dismissed petitioners' unconstitutional taking and equal protection claims. Inasmuch as "[t]he prospective recipient of a collect

call is in complete control over whether . . . to accept the call and thereby relinquish [his or] her money to pay for it[,] [t]here is no taking of which to speak" (*McGuire v Ameritech Servs., Inc.*, 253 F Supp 2d at 1004). Finally, petitioners' equal protection claim similarly fails because they have not demonstrated either that their fundamental rights have been infringed or that they were treated differently from any persons who are similarly situated (*see Daleure v Commonwealth of Kentucky*, 119 F Supp 2d 683, 691 [WD Ky 2000], *appeal dismissed* 269 F3d 540 [6th Cir 2001]; *see also Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 630-631 [2004]; *Matter of DaimlerChrysler Co., LLC v Billet*, 51 AD3d 1284, 1287-1288 [2008]).

Petitioners' remaining claims are either rendered academic by our decision or, upon consideration, have been found to be lacking in merit.

Spain, Carpinello, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed, without costs. [*See* 2007 NY Slip Op 34053(U).]